Human Services. Mr. Gage when you're ready. Thank you. Court and counsel. I'm Richard Gage here representing the DOE 11 family. There are at least three, I believe, discrete legal issues that this court needs to address in this case. The first is the application below of this court's holding in the DeBasin. Excuse me for not pronouncing that in the French form. But this court in DeBasin clarified this court's earlier holding in Walther and came to what I believe is not at all surprising conclusion that when a special master is looking at the proof of any particular element of petitioner's case, they need to look at the proof put on by respondent and petitioner simultaneously. You don't have to divide those up. However, the court made clear in DeBasin, as was the holding in Walther, that if the evidence deals with factor unrelated evidence or the government's case itself, that that is dealt with separately. I don't believe that that legally is, I believe that that's been established in this court legally. I don't believe that there is any serious question about that. However, the court below, the special master below, did combine that analysis, said she combined the analysis. Respondent in respondent's brief says and admits that she combined that analysis. And I'm just going to read you one sentence. This is from respondent's brief at page 34, citing DeBasin. This court held, this court being the Federal Circuit Court of Appeals, held that a special master may consider proof relating to alternate causes in assessing whether petitioners established a prima facie case. We believe that that's legal error. And this is an important issue. Respondent argued this below. The special master accepted it. The claims court accepted it. And we believe it is absolutely clear legal error. In order to do that, this court would need to overturn Walther. That was the express holding in Walther. Not that it makes any difference, but I was here standing in one of your courtrooms in Walther. That was my case. It has been the practice, habit and practice of this program since Walther to divide those analysis. You have petitioner's case in chief. You have respondent's factor unrelated case. Is it not correct to read Walther? Maybe you're saying it's not. But I had understood Walther to be saying that you could consider the other evidence, including evidence dealing with potential other causes, in considering whether a prima facie case was established. But once a prima facie case is established, the language from Walther is that the vaccine act does not require the petitioner to bear the burden of eliminating an alternative cause where the other evidence is sufficient to establish a prima facie case. So distinguishing Paffert in that respect. Obviously, the function of Walther was to explain Paffert and explain why. So what is your understanding of Walther's take on Paffert, i.e. before a prima facie case has been established? I understand your question, Your Honor. Walther explicitly says that these are two separate inquiries under the statute. And that is the holding of Walther. I put it in bold in my brief. Judge Dyke wrote that. I argued it. These are two separate. What are the two D's? Excuse me, Your Honor. That is petitioner's prima facie case, all the evidence, my evidence, respondent's evidence, everything that goes in this case, for instance, to brain weight. That's all dealing with my prima facie case. But Sid's, for instance, which was respondent's case, had nothing to do with my case. That's respondent's factor unrelated case. Those are two separate analyses under the statute. That's what Walther held. That's how we've practiced in this program since Walther. DeBasin comes out. And the government argued successfully to the special master and to the claims court that actually there was no oral argument because DeBasin came out while the case was back on remand. But argued to the claims court and argued in briefs to this court that DeBasin has changed that landscape. And now you can combine those analyses together. I believe that's clear error, and I don't believe that that's what this court said in DeBasin. DeBasin was very explicit. I think there has been this kind of progression over the years when you start with Pafford and Walther and DeBasin, and they're all kind of touching on the same issues. And I think each one of them has clarified, provided more clarity. But in DeBasin, this court specifically said that the government, like any defendant, is permitted to offer evidence to demonstrate the inadequacies of petitioner's evidence on the requisite element of petitioner's case in chief. Any evidence. Any evidence. Excuse me? Any evidence, right? On petitioner's case in chief. Such as evidence that there was no causation, second often factor, because there was something else was the cause. What's wrong with that as a way of reading these cases? Well, Your Honor, that reduces this. I mean, that actually goes directly to what Judge Dyke wrote in Walther. That's just playing a word game. Well, I'm not sure. I mean, what do you do then? I mean, let's take a hypothetical. Let's suppose that the, let's really make it simple, that the evidence is that there was a vaccination of a child, and then on the way home from the pediatrician's office, there was an automobile accident that had traumatic effect on the child that resulted in severe brain trauma. What's your view as to how the evidence should play out in that setting on the prima facie case of showing actual causation? Absolutely. And that is, in fact, intellectually the example that I use because I've been thinking through because it's very plain. It's clearly a factor in related defense. I mean, a traumatic brain injury would have nothing to do with, say, petitioner gets a DTAP shot, 12 hours later has a seizure. Let's assume that for part of my hypothetical, I wanted to, when I say traumatic brain injury, let's make it easier, has a seizure as a result of, has a traumatic brain injury that provokes a seizure, so that what you have is a condition that is the same condition that could have been caused by the vaccine. Absolutely. That is clearly a separate analysis that has to be analyzed separately. So do you have a prima facie case of causation in that case? Absolutely. I mean, I could. Now, of course, me, because I'm, well, we're dealing with the hypothetical, but I understand how, what defenses work and what defenses don't work in this program. I've been in the program for so long. So I would analyze it before I ever filed the thing. But for purposes of your question, can the three steps in alpha, hand cause, can DPT cause a seizure? Yes. We've established that in the program. Was the timing appropriate for that seizure? Yes. We've established that in the program. Did the child have the condition that was complained of, although that we're saying could be caused within that period of time? In this case, seizure, the answer is yes. Okay. You still haven't gotten to that second prong, which is the critical prongs. Oh, no, no, no. I just did with the did cause. Did cause. Actually caused, right? Yeah. I can establish, given those set of facts, my three prongs under alpha, and I will absolutely flat lose the case as soon as respondent raises their hand and establishes their facts. But how can you establish the second prong if you interpret it, as I take it you do, as requiring a showing of actual causation by proponents? Your Honor, it's a function of understanding what second prong of alpha means. Yeah. That's not so clear, but what is it you think the second prong of alpha means? I've read it as it's been characterized in different places, and it sounds as if it means actual causation. Well, but, Your Honor, I'm going to, well. Let's start with the first principle. Do you agree that it does require a showing of actual causation or not? The three prongs of alpha, when you combine those, that is our proof of actual causation. Yeah, yeah, but let's leave off prong one and prong three for present. I'm buried down on prong two. I really want to get your answer to this, and then we can go on. Do you think prong two requires a showing of actual causation? That it actually happened is what it, I can't. What you're saying, the short answer to your question, Your Honor, is I do not agree with what you're saying. Why is obviously the more important reason. The Walther case itself was, is a good example. Can cause is the first step under alpha. Can the vaccine cause the condition complained of? In Walther, the condition we complained, it was a tetanus vaccine that was given. The condition we complained of was ADEM, acute disseminated encephalomyelitis. And then we have the timing issue. In Walther, we established that tetanus could cause that particular condition. There are other special masters who have held that in the past. We established that if it was going to be caused, it would be caused within that period of time. That's the third step of alpha. So we're coming back to focus on the second step here. We ended up, after this court overturned the special master in Walther and remanded it back, we ended up losing Walther. And the reason was because we didn't establish the second step. And the second step was, did she have the condition? The condition being ADEM. He said, you established that it could cause it. You established that it could cause it in this period of time. But you did not establish that she actually had the condition that you are complaining of, ADEM. You fail under the second step of alpha. Well, but just showing that the child had the condition doesn't seem like a very good description of the way the second prong has been described in most of our cases. And let me read. You're very familiar with this. It says, a logical sequence of cause and effect showing that the vaccination was the reason for the injury. That doesn't stop at showing that an injury occurred of the sort that would follow, in some instances, from this vaccination. It says, was the cause. Why isn't that a requirement of causation? It seems to be pretty clearly to do just that. We've said, we've used those very words on several occasions. That was from Dabasin. Right. And do you think that's an incorrect formulation of what we ought to be doing? Well, the short answer, again, the short answer is yes. But the fact is. So you're really quarreling with that language. Well, not in this case. I mean, what we're talking about here is completely different than. There are some. What? The niceties, the intricacies of how this has been applied is not consistent. I mean, I'll put that out for you. It's not consistent in this program. But my job is to show nothing more than a prima facie case. Okay? Alton tells me how to do that. Can it cause the condition I'm complaining of? Can it do it? Can it do it in this period of time? Does the child have the condition that was complained of? If I satisfy those things, all I've done at that point is created a prima facie case. But the critical part of what you're saying is that last part. You are equating what DeVos and others describe as a logical sequence of cause and effect, showing that the vaccination was the reason for the injury. You're equating that with your perceived requirement, which is simply to show that the child had the condition. In one sentence, is that your position? Only on the second prong of Alton. Right. We're talking about the second prong. As far as I can see, if the second prong is as we've described it, it renders the first and third prongs largely window dressing, which is a problem. But if you read it as it reads, what I'm saying is it seems hard to get from that language to your construction of the language. So help me. Okay. But you just identified it. And I will tell you this, and you'll hear it in a few minutes from Respondent. Respondent argues that the second prong of Alton is, in essence, an entire different and new. The way Respondent interprets the second prong of Alton renders the first and third completely superfluous. You have to show by cause and fact, heavy lifting, blah, blah, blah. They've always inserted scientific proof in that, which this court has consistently struck down. But the second prong of Alton is an animal unto itself, according to Respondent. To make the first and third prongs of Alton work, to make them have any bearing at all, the second prong of Alton is what I say it is. Well, except that it seems to me that if you're right about that, then what you've done comes very close to turning off-table injury cases into a new set of table injury cases. Because what you're saying is, as long as you show that there's some medical theory that would account for this injury, and that there's both temporal and a particular injury, you're done for your prima facie case. And then the government, if it can't come back and show some non-idiopathic cause, then you win. But isn't that exactly what the table does? With the exception that the table skips the part about having what prong one of Alton is, which is having some medical theory, because they've already established, in effect, a medical theory for that class of cases. But haven't you really created a new set of tables for off-table injuries? What you just described, I think, is exactly what Alton describes, and Capizano, as a matter of fact. And does that... you still have to deal with prong three, you still have to deal with prong two. Okay, prong three is in the table. Right, right. Because of temporal. Right, so prongs, as you view it, prong two and prong three are both, in effect, table-type inquiries, right? One, did they have... prong two is, did the child have the condition? And two, did that condition manifest itself within a temporally significant period of time, pertinent period of time? Those are both table considerations. Those are incorporated into the table in table injuries. I have to scientifically prove the timing. I mean, I have to put... in a non-table injury, I have to scientifically show what the time periods are. And on the first part, to say, I want you to understand, this is not some little easy thing. Showing prong one of Alfin will require me, in some cases, to have two or three experts in the courtroom. You know, with vaccines, the medical community does not welcome with open arms the proposition that vaccines cause this, that, and the other injuries. There are no epidemiological studies outside an old one in 1980 for the DPT vaccine. For me, to prove to walk into the courtroom with a cause-and-effect case is a huge burden for me. That first prong is huge. That is what the table takes away. That is not an insignificant thing. However, in this particular case, if you take away this academic discussion that we have been having about... That is a pretty practical impact, it seems to me. Certainly, and it would be in every case, and is in every case. But in this particular case, you can't say that SIDS, which I don't believe is a cognizable defense in the first place for the respondent, is part of my cause-and-effect case. You can't say, to use your example, your honor, that a traumatic brain injury is part of my case. That is somebody else's case. That is a respondent's case. Walther says you can't combine them. They are two separate analyses. If you do what you said, it can't be the vaccine causing it if it was some disease process that they caught from the dog, or they got in an auto accident, or pick your poison. If you say, I have to eliminate those in my case-in-chief, then that violates the clear statement by this court in Walther. But Mr. Gage, I'm still puzzled somewhat by the fact that you're saying that in your attempt to establish the cause in fact, which is a prong to about this, you did not raise the fact that SIDS was not a result. It was not a cause, right? SIDS was one of your-you raised SIDS as not being part of the cause in order to eliminate SIDS. Now you're saying that basically the government, the respondent, cannot raise SIDS as a defense? Oh, no. Even though you raised an initial? Oh, no, absolutely not, Your Honor. The government, we completely anticipated that the government was going to say SIDS, even though it's legal. They do it in every death case we get. If there's any opportunity for them to raise SIDS, they do, which is another legal issue that I'm going to ask this court to address. Because of the idiopathic? It absolutely violates the statute. We hear it all the time. There's the Davis case at the claims court level, but- But to just be clear, it violates the statute if it comes in after you've established your prima facie case, but not if it comes in before then, right? Oh, no, Your Honor. That would violate Walther. I mean, I have to eliminate an idiopathic defense in my case in chief in order to establish my case in chief? How would I do that? How do you eliminate an idiopathic defense? What do I do? The coroner says, I don't know what it is, and my burden then to establish my prima facie case is to disprove that he didn't know what it was? I mean, that's a hurdle I can never get over. Of course, that's assuming away from the moment the evidence and the discussion of the narrowing of this concept of SIDS to something which is more closely associated with incidental asphyxia. Well, yeah, I mean- That's not idiopathic at that point. Yeah, but what Respondent's expert is really saying there is she didn't agree with the coroner's assessment that you couldn't figure it out after looking. I provided the definitions for you, both ours and Respondent's. You couldn't figure it out after a close examination of the scene and blah, blah, blah. She disagrees with that. She thinks that she could figure it out. Now, we don't know what it was she figured out because she said it was either overlaying or wedging were possibilities and are statistically more likely when there's an adult next to a child. Still, to get back to your question, Your Honor, we anticipated their defense of SIDS. Of course, they raise it in every case. Anytime there's a death case, if there's any possibility for them to raise SIDS, they raise SIDS. We talked about that. That's not the question. That's not the reason we're here. The reason we're here is because in Alton Prong II, that analysis, the special master combined her analysis of their defense, their factor unrelated defense, with my case in chief. She can and should analyze the factor unrelated defense, but she has to do it as a separate construct. That is absolutely the holding in Walther. In DeBasin, this court made it absolutely clear that when the special master combines respondent's case, that's absolutely fine as long as it's a respondent's case that deals with my proof. In this case, it was brain weight and the weight of the other organs. That's the pathological evidence that we were relying on. She can and should analyze those at the same time. When it comes to respondent's factor unrelated defense, DeBasin also made clear that it wasn't error because what the respondent was producing was not factor unrelated evidence. It was evidence that went to petitioner's case in chief. Now, do you understand, one more question on this SIDS matter, is it your interpretation of the special master's decision that it was predicated on a finding that SIDS was in fact the cause of this death? Well, your honor, I leave that up to smarter minds than mine. I couldn't actually tell. She cites numerous SIDS articles, talks about how they're consistent, then makes a statement that the respondent's expert thought it might have been overlaying or wedging, never actually comes to a conclusion as to which one of those she was finding, and clearly didn't cite anything in the record to support that. So, it's anybody's guess. I couldn't figure it out by reading this. Okay. Thank you very much, Mr. Gage. We'll hear next from Mr. McLeod. We've given Mr. Gage about ten extra minutes, and if you need extra time, we'll give you extra time. And Mr. Gage, I think you reserved some time for rebuttal, so we'll reserve your time, since we've questioned you extensively. Mr. McLeod. Thank you, your honor. May it please the court, counsel. Your honor, this is a tragic case, and the special master below was charged with the unenviable task of sifting through all the evidence, both the factual evidence, the medical literature, and the expert testimony to try to determine whether, in fact, the hepatitis B vaccination caused child Doe 11's demise in December of 1994. The petitioners proffered... What has taken all this time in this case? First of all, when was the petition filed in this case? The petition was filed, your honor, 1999. 1999. This was... What went on before the petition was filed? I assume normally that would be time bar. What was it that kept it from being filed? It was the addition of the hepatitis B vaccination. It was added to the table? Yes, your honor. Was it, yeah, I guess to the table. Yes, it was added, but no table injuries were added. Right, understood. And that happened when? In 1997, I believe. I see. It was retroactive with respect to... Yes. This was... So we're really only looking at more like 10 years rather than 16 years for this case to be resolved. A long case. You know, I have... We can explain... There you have it. The petitioners in this case claimed that the hepatitis B vaccination caused a specific reaction in child DOE-11, namely an aberrant immune response which resulted in a cytokine storm, an immunological reaction resulting in significant edema throughout the body, specifically brain edema, which resulted in a respiratory death in this child four and a half hours after she received the hepatitis B vaccination. So petitioners presented a medical theory under Olfen Step 1, namely whether hepatitis B vaccinations can cause immunological reactions. Can they cause a cytokine storm even? And they presented the testimony of Dr. Levin, their immunologist. The special master in this case concluded that the petitioners did present a plausible medical theory under Olfen Prong 1. The government did not concede the medical plausibility of the theory in this case. However, as the government prevailed, ultimately in the case, we did not appeal the special master's ultimate finding concerning Olfen Prong 1. However, the special master concluded, based on the totality of the evidence in this case, the petitioners failed to demonstrate their prima facie case as to Olfen Step 2 and to Olfen Step 3. What do you understand the prima facie requirement of Olfen Step 2 to entail? Your Honor, the causation standard for off-table cases in the Vaccine Act has several approved, if you will, legal standards. One is the Olfen 3-step case. The other is in shy face, in which this court held that in order to receive compensation, a petitioner must demonstrate that the vaccination is not only the but-for cause of the injury, but also a substantial factor in causing the injury. That's another concept. And finally, the third one is a more broad concept, which was talked about in the Pafford decision, which is whether the vaccination can cause the kind of injury claimed and whether it did, in fact, cause. Why is did, in fact, different from the shy face test and the test that we've articulated of actual causation? I think under Olfen, the can of set aside Olfen for a minute. All right. You said there were three tests. It sounded like you described two. Well, the can it cause, did it cause is like a two-step test. Well, why does did it cause not swallow can it cause? If it did cause, it obviously can cause. You're absolutely right, Your Honor. Where I'm going with this is I want to know from you the government's position as to what Olfen 2, step 2, prong 2 means. Does it mean that there has to be showing of actual causation? Our reading of step 2 is, as you read from the test itself, that there has to be a logical sequence of cause and effect showing that the vaccination was the reason for the injury, and that is an actual causation concept. Why don't we just stop there? What's the sense of saying Olfen has two other requirements, by the way, if you've already got to show causation in step 2? In our view, the prongs 2 and 3 of Olfen together go towards the actual causation concept. What does prong 3 add once you've decided in prong 2 that there was actual causation? Well, it goes to the nature of the evidence. To prove actual causation, there's direct evidence and circumstantial evidence. Direct evidence of causation, I agree with you. If a petitioner is able to prove direct evidence of causation, then there's no other steps that they need to take. It depends on the nature of the evidence that they have. There is no evidence of direct vaccine causation in this case. What kind of evidence am I talking about? Some type of biological testing that actually demonstrates the vaccine virus. We have that in oral polio vaccinations, where you can actually get anterior horn cells in autopsy that match to the vaccine type. There's direct evidence of actual causation. They don't have to demonstrate prong 1 or prong 3. There's actual proof the vaccine caused it. But in the vast majority of vaccine cases, including this one, there is no direct evidence, and the petitioners have got to rely on circumstantial evidence. That's where the Olfen tests come in to attempt to weigh the persuasiveness of the circumstantial evidence. But all that sounds like you're leading up to saying that Mr. Gage's characterization of Olfen is actually more accurate than the one that I read, that it isn't proof of actual causation, it's proof of several different circumstances, all of which give rise to an inference that there was causation. Which inference is sufficient, if unrebutted, to satisfy the burden? Well, the problem we face, Your Honor, is we do have binding case law from the circuit, and the binding case law gives us that the petitioners have to establish all three steps of Olfen. It's difficult for me to argue that step 3 doesn't matter. It does, under the binding precedence of this court. I'm merely trying to explain an explanation as to why prong 3 of Olfen supports prong 2. I mean, prong 3 of Olfen talks about the proximate relationship between the claimed injury and the vaccination. Well, there's both literal temporal association, that is, it happened afterwards, and then there's medical one, that is, it happened within an accepted medical time frame, from which you can infer that the vaccination was the cause of that injury. In order to establish the full prong 2 of Olfen, must there be an elimination of all other causes, all other probable causes? Is that one of the aspects of establishing the causation, in fact? So you eliminate all of the other parts in the process of establishing causation, in fact, due to the vaccine? The petitioner in prong 2 needs to address the evidence that's in the case, and if there is evidence in the case which glaringly shows that there is an alternative cause for the injury, as part of the weighing of whether or not, from the special master's perspective, that the petitioner has presented sufficient prima facie evidence that but for the vaccination, this injury wouldn't have occurred, then yes, Your Honor, any clear evidence of an alternative cause that's in the record, I should say a petitioner doesn't have to rule out, but if they fail to rule it out, depending on what the nature of the evidence is, it can undermine their ability to prove but for causation, clearly. In the example that Judge Bryson gave is a good example of that. So suppose that what we have is an Olfen step 2 inquiry, at the conclusion of which the special master says, well, I've heard all the evidence, and I am persuaded that there has not been a prima facie showing of causation under Olfen, because I think that you haven't shown by a preponderance that the vaccine caused the condition. Instead, I think the evidence that the government has pointed to of some other cause is enough to persuade me that there isn't a prima facie case, there isn't a likelihood by a preponderance of causation by the vaccine. Okay, so you're done. Now we go to the rebuttal case, statutory. What's left to happen at the second stage that Walther talks about? I think in that scenario... Nothing, right? No, Your Honor, nothing. When are we ever going to have a situation in which the Walther scenario is actually going to play out? If you're right that in looking at causation, the special master has to consider the entire range of events, including other things that may have precipitated the injury. If you have a series of events and you don't have another explanation for the reason that something happens, it makes the one explanation that you've got seem a lot more likely than it would be if you've got three other really good explanations. Agreed? Agreed. Doesn't that go to the question of whether there's actual causation? So if that's necessary to establish actual causation, if that's required under often step two, what's the statutory role? What's the role that the statute assigns to the government's rebuttal case with respect to other causes? Well, the petitioner's burden isn't to rule out every other possible cause that there may be. That would go too far as far as their ability to demonstrate a logical sequence of cause and effect. This court has pointed to the kinds of evidence, the burden of production, if you will, that a petitioner has to present to meet their evidence. One of it is the testimony of treating physicians that link the vaccination to the injury. Even if there's other evidence of the cause, if treating physicians are linking vaccination and the injury, especially if they do it in an unequivocal way, that is a sufficient level of proof for the petitioner to satisfy the second prong of alpha. It's a type of evidence. It's circumstantial evidence that the petitioner can rely on, even if there are other causes in the record that the government may be able to point to. That might be an example where, granted, there's another cause in the record, but the balance of the evidence rules in petitioner's favor, and the burden would shift to the government to prove that that other evidence of either a metabolic cause or a traumatic cause or something was the principal reason for the injury, despite the fact that the treating physicians may have ascribed it. But that burden doesn't shift until there is an establishment of a prima facie case. Correct, Your Honor. If the prima facie case requires the petitioner to eliminate all other causes, then so be it more than the statute requires, isn't it? Well, legally, I'd have to agree that the petitioner does not have to rule it out. But as a practical matter, as in this case, they may have to. In Walther. Well, I don't quite understand that. Because if I establish my prima facie case and the burden shifts to the government at that point, and the government comes forward with other evidence, isn't it at that point that I would need to move up and say those are not proper causes and there is no relationship between the injury and the causes that are raised by the government? At that point, I would have to add additional information, evidence to the record. And as Mr. Gage indicated in his argument, the way vaccine cases are presented, all the evidence is presented all at once, including evidence of factor unrelated. I understand that. But what if, in fact, the petitioner does not raise and eliminate all of the other causes and the government does bring in that particular evidence? Does the petitioner have the opportunity to rebut it at that point? I would say yes, Your Honor. The petitioner could rebut that type of evidence. I'm not sure with what kind of evidence, but they certainly would be allowed to address it and attempt to indicate that it was not the cause. The conflict with the alternative cause factor unrelated test comes with the table. Because the table is created to allow for mere temporal association after vaccination, it creates the presumption that the vaccine caused it, and so factor unrelated was a construct in the act that allowed the government to rebut such a temporal association alone concept. The table addressed essentially prongs one and three of all three, but not prong two. That was presumed in a table. Can I just make sure I understand the government's position in this case? Are you saying in connection with the prima facie case, in order to establish prong two, the petitioner has the burden to rule out all alternative causes? Is that what you just said? No, Your Honor. Okay. No, the government's position is that the petitioner has got to demonstrate based on the record as a whole, which includes evidence that may indicate an alternate cause, that more likely than not the vaccination was the reason for the injury. They don't have to rule it out, but as in this case, their expert attempted to rule it out, the SIDS evidence, because there was no other evidence of vaccine association other than temporality. And so in order to bolster their case, the petitioners attempted to rule out another cause that was already in the medical record. The autopsy report itself listed the manner of death as sudden infant death syndrome. Well, as Mr. Gage pointed out, that was an expected defense of the government. Well, it doesn't diminish the point, but Dr. Shane, petitioner's pathology expert, used that as a prong of his own report. He was the one that we hadn't put on our defense. He put that as part of his testimony, and that, of course, the special master in attempting to test the subjective beliefs of the experts looked at all the evidence. I think what you're saying is the petitioners don't have a burden to rule out other causes, as long as those other causes are unconvincing. That doesn't make a lot of sense to me. It's a difficult construct, Your Honor. What you're saying is if those other causes would lead one to conclude that they, rather than the vaccine, caused the injury, then they better work very hard at the prima facie case, before they get to the prima facie determination, to eliminate those other causes. You may say they don't have a burden, but the consequences of their not persuading the special master that those other causes did not cause the injury is that there will be found to be no prima facie case under often step two. Am I wrong? Well, I believe this court kind of acknowledged that in Walther where they said as a practical matter that petitioners may have to address other known causes that are in the record when the rest of their evidence does not raise to a level of prima facie entitlement. So does this all go to the weight of what the other evidence is? I mean, is it just case specific in terms of what burden you're placing on the petitioner with respect to alternative causes? Is that merely a factor based on the strength or the nature of their other evidence of causation? I think it is case specific and it's based on the totality of the evidence in the particular case. I think the special master... So just carrying that one step further, with the strength of their other evidence proving causation in a particular case necessarily decrease their responsibility to rule out alternative causes. Would that be the case? I think so. The more hypothetical, the more nothing in the record to support an alternative cause, the less likely the petitioners have to attempt to bolster their case. Because as Judge Bryson indicated, I believe one of the elements that can help, it's not dispositive, but can help the petitioners is lack of alternative cause. From an analytical approach, that is relevant. It's not dispositive, but it's part of the evidence in the case. Petitioners recognized that if there was no other cause for a sudden death of this infant four and a half hours after vaccination, that that could help bolster their argument on pure circumstantial evidence that the vaccine more likely than not was the cause. Because again, there was no evidence in this case linking the vaccination in any way to the death other than temporal association. So as a practical matter, the petitioners needed to address what the autopsy report concluded was the reason for the injury or was the reason for the death necessarily because the special master was required under the act to consider the autopsy report. She wasn't bound to find obviously that the vaccine caused the death. She needed to weigh the circumstantial evidence the petitioner put forward, test its reliability, its trustworthiness, and then conclude whether the totality of the evidence showed that. And it didn't in this case, as the Court of Federal Claims below found. Going through each of the petitioners' theories and the evidence, the special master found that the subjective beliefs of petitioners' experts simply didn't comport with the facts of this case. What is your interpretation of the government's interpretation of Section 13A2A that references Section 13A1 and says, for purposes of Paragraph 1, the term factors unrelated to the administration of the vaccine does not include any idiopathic, unexplained, dot, dot, dot, illness or condition? Does that apply at the prima facie case stage as well as at the rebuttal stage to the extent that there's a difference between the two? I think you've explained that in terms of the presentation of evidence there really isn't. In our position, the Vaccine Act also requires that the special master consider any diagnosis or conclusion contained in the record. All right, suppose the conclusion is that this child died from idiopathic seizure. In that situation, that would not be factor unrelated evidence because it's idiopathic. However, it would be some evidence that there's no... Petitioners are arguing that we know the cause of these seizures. It was vaccine related. The medical records say there is no known cause for these seizures. It's idiopathic. That has some relevance in whether the petitioner is meeting their burden of proof. Now, I couldn't say... On offense, prompt too, right? Yes, because it's evidence in the record. If a medical doctor, in this case a coroner, looks at all of the pathological evidence and concludes that there is no cerebral edema, no evidence of anatomical cause of death, and here's my result, it's SIDS, and then petitioner's expert comes in and says, no, no, no, no, this is a vaccine injury, a vaccine death. It is appropriate for the special master, in weighing and probing the trustworthiness of petitioner's expert, the conclusions that are already in the record, even though it's SIDS, even though the definition is SIDS, but that doesn't mean that SIDS is a factor unrelated to the vaccination. There's nothing in the vaccine... Under your analysis, when would factor unrelated ever be pertinent as a matter of excluding evidence of SIDS? It seems to me you just described a regime in which the diagnosis of SIDS comes freely in, and at the end of that determination, the special master makes a finding as to causation, and if the special master finds no causation, or for that matter finds that there was causation, either way, the special master has made that determination with the SIDS diagnosis fully in mind. Let me back up from the SIDS diagnosis. We're not saying that the SIDS diagnosis is what defeats the petitioner's claim. We're saying evidence, the pathological evidence that you see in SIDS, but can explain the nature of the pathological evidence the petitioner is saying, oh, this is indicative of a vaccine injury. And that's what the special master did in this case. She took a look at the pathological evidence in determining whether there was cerebral edema, for example, a key part of the petitioner's case. The autopsy report found no cerebral edema. It's perfectly legitimate for the special master to look at that conclusion of an independent coroner and use that to probe the trustworthiness of the subjective finding of the petitioner's expert, even though that was part and parcel of the SIDS, ultimately a SIDS diagnosis. And the government, in what bite would Section 13A2A then have? When would the government have to say, we can't introduce this evidence because of 13A2A? It goes to the actual finding of a factor unrelated. If the special master found that the child died of SIDS because the evidence pointed to a SIDS, then that would not be an appropriate factor unrelated. But if the special master found that the child didn't die because of the vaccine, in light of the evidence introduced of SIDS, then that would be okay. Not the diagnosis of SIDS, per se. The evidence that is... When the petitioners are saying, this pathological piece of evidence is more consistent with a vaccine injury, it opens the door for the respondent to say, it is not consistent with a vaccine injury, and more than that, it's consistent with this kind of injury. Even though we might not be able to prove a factor unrelated, we are analyzing the elements of the pathological evidence by saying, petitioner's position is not trustworthy. If we weren't able to say that, then it would be more trustworthy. If we weren't able to present any evidence that there's another explanation for that edema, or for that heavy brain, or for that pathological thing, then that would enhance the petitioner's case. But we were able to do that. Now, we didn't rely on the SIDS diagnosis to defeat the claim. We related on the pathological interpretation of the experts. Is this case... Is how this case went down affected? Because, as I understood the record, tell me if I'm wrong, we're not just dealing with a blanket assertion of SIDS, or even a diagnosis. I mean, we're dealing with a fact situation that included certain events. That's correct. And then, at least a suggestion of asphyxiation, which... So, I mean, I think you've made a bunch of statements here, and you've talked in the context of SIDS in general, but it seems to me that the specificity of the kind of evidence here might not be your typical throwing in just SIDS, which is a cause that nobody completely comprehends. Am I right about that? I think you're correct. As the special master's decision did in this 43 pages analysis, she was focusing on the facts of the case, whether the facts of the case, pathological and clinically, meshed with the petitioner's medical theory of causation, and whether there was a logical sequence of cause and effect between the vaccination and the injury. She was looking at the pathological evidence, the expert testimony, not just SIDS. It wasn't a situation where she said, well, you know, I have all your evidence, but I have evidence of SIDS here, and therefore I find that it's most likely SIDS as opposed to what? No. She was using the evidence for a limited purpose, and that was to examine the nature of the facts. She applied essentially a rule of reason, if you will, looking at all the evidence, and concluded that she simply was not persuaded by the petitioner's theory. Go ahead. Very well. Thank you, Mr. McLeod. We'll give Mr. Gage a minute. Thank you, Your Honor. Thank you, Your Honors. I actually don't have any particular. I'll say one thing, I guess. If you have any questions for me, I'd certainly field them, but you anticipated most of my comments with your questions. I would just say that reviewing Walther, there is no time that Walther anticipates that the analysis of petitioner's prima facie case and a respondent's factor unrelated case or that evidence dealing with factor unrelated issues is to be combined. Those are separate analyses. Of course, the record comes in as a whole, but this is a question of how the special master analyzes the record. I cited it in my brief, of course, and the specific citations therein, but there is no time when those are to be combined. Those are separate analyses, and that's the error here. I mean, there are several errors I pointed out, but that's the error here that we've been talking about. Special master admitted she combined that analysis. She pointed to this court's holding in DeBasin that this court has authorized that combining of analyses, and I believe that that's error under DeBasin and it's error under Walther. That's all I have. Thank you. Thank you, Mr. Gage, and thanks to both counsel. The case is submitted. Thank you. All rise. The honorable court has adjourned until tomorrow morning at 10 a.m.